The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Edward Dean WELLS, Defendant-Appellant.

No. 82CA1019.

Colorado Court of Appeals, Div. I.

Aug. 16, 1984.

Rehearings Denied Sept. 20, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia D. Jones, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Larry A. Pozner, P.C., David Kaplan (on the briefs), Denver, for defendant-appellant.

STERNBERG, Judge.

The defendant, Edward Don Wells, was charged with second degree kidnapping, robbery of the elderly or handicapped, and first degree aggravated motor vehicle theft. He was convicted on all three counts following a jury trial, and was sentenced to terms of twenty years (second degree kidnapping), twelve years (robbery degree kidnapping), twelve years (robbery of the elderly or handicapped), and five years (first degree aggravated motor vehicle theft). The sentences, each beyond the presumptive range, were to run concurrently. The defendant appeals, and we affirm in part and reverse in part.

The evidence, taken in the light most favorable to the verdict, discloses these facts: At approximately 5:45 p.m. on November 21, 1981, the victim, aged 72, parked her car in downtown Denver and was preparing to place coins in a parking meter when she was approached by three men. One of the three men, later identified as one Muskelly, grabbed the victim and threw her into the back seat of her car. The defendant took her car keys and the three men drove off in the car, with Muskelly holding the victim's head down so that she could not see where she was. Eventually, before releasing her, the defendant robbed the victim and kicked her in the ribs.

Subsequently, the men drove the victim's car to Nevada. At approximately 5:00 p.m. the next day, the men picked up hitchhiker Jimmy Muldoon near Winnemucca, Nevada. Shortly thereafter, the defendant ordered Muldoon out of the car and then robbed him.

The defendant and his companions were later arrested in Reno, and at trial, over the defendant's objection, Muldoon testified about his encounter with the defendant. Before Muldoon testified, the trial court gave a limiting instruction informing the jury that the testimony was to be considered only for the purpose of showing the facts and circumstances surrounding the acts charged in the information.

I.

The crux of defendant's appeal is that the evidence concerning the Muldoon episode related to an independent criminal transaction and resulted in his conviction based on events other than those charged. We disagree with defendant's contention that the trial court erred in admitting Muldoon's testimony.

■ Generally, evidence is inadmissible which shows or tends to show that the accused has committed a crime wholly independent of the offense for which he is on trial. *White v. People*, 177 Colo. 386, 494 P.2d 585 (1972). However, "evidence of uncharged offenses which is part of the criminal transaction for which the defendant stands trial is admissible to provide the factfinder with a full understanding of the events culminating with the crime charged." *People v. Litsey*, 192 Colo. 19, 555 P.2d 974 (1976). *See People v. Geller*, 189 Colo. 338, 540 P.2d 334 (1975); *People v. Manier*, 184 Colo. 44, 518 P.2d 811 (1974); *Abshier v. People*, 87 Colo. 507, 289 P. 1081 (1930).

■ Here, the defendant was involved in a car theft and robbery of a woman in Denver, and some 24 hours later, was involved in the robbery of a man in Nevada while riding in the car allegedly stolen in Denver. The evidence of the Nevada robbery involving the car stolen in Denver was "an integral part and parcel of the total picture" which surrounded the Denver crimes. *People v. Geller, supra; see People v. Manier, supra.* In words particularly appropriate here it was stated in *People v. Litsey, supra*, that: "The events beginning with the defendant's commandeering of the automobile and ending with the release of the [hitchhiker] the following day constituted a single criminal episode and evidence explaining the entire episode was properly admitted at trial."

## II.

■ The defendant contends that it was reversible error for the trial court to allow the prosecutor to elicit evidence, over his objection, concerning the exercise of his right to remain silent. We find no such evidence was admitted.

When the defendant and his companions were arrested in Reno, as the police were attempting to handcuff the defendant, he said to one of his companions, "Don't make any statements." The trial court permitted this statement to be introduced at trial "to show a consciousness of guilt and further

to demonstrate, as had been already put forth in the People's case, that the defendant was in charge of the three persons alleged to have committed these offenses."

The defendant contends that this evidence was an impermissible prosecutorial comment on his constitutional right to remain silent, and was in any event, irrelevant.

The defendant was not indicating to the police that he wished to invoke his right to remain silent. Indeed, he had not been advised of his *Miranda* rights. Instead, he made a voluntary statement to his companions, directing *them* to remain silent. Therefore, the People did not impermissibly present evidence concerning the *defendant's* exercise of his right to remain silent.

In addition, "[a] trial judge has broad discretion in determining the relevancy of evidence and if the evidence 'has probative value in determining the central issue in dispute, the trial court's decision will not be reversed unless it is shown that there was an abuse of discretion.'" *People v. Schwartz*, 678 P.2d 1000 (Colo.1984). The trial court's determination of relevance here was not an abuse of its discretion.

## III.

■ Finally, the defendant contends that the trial court erred in imposing a sentence beyond the presumptive range. We agree that the defendant must be resentenced.

Three months prior to the instant charges, the defendant had pleaded guilty to a charge of criminal attempt to commit motor vehicle theft, a felony. The defendant requested probation, and the trial court deferred a decision on the request for 90 days, on the condition that the defendant enter Cenikor, a drug and alcohol treatment center in the Denver area. The defendant left the center ten minutes after arriving, and five days later, committed the instant felonies.

Section 18–1–105(6), C.R.S., and § 18–1–105(9), C.R.S. (1983 Cum.Supp.) provide for sentencing beyond the presumptive range for classified felonies when extraordinary

aggravating circumstances exist. The trial court found that § 18–1–105(9)(a)(V) was applicable in this case. That statute provides that a court, if it sentences a defendant to incarceration for the commission of a felony, *shall* sentence beyond the presumptive range if:

"The defendant was under confinement, in prison, or in any correctional institution within the state as a convicted felon, or an escapee from any correctional institution within the state for another felony at the time of the commission of a felony."

The trial court found that since the defendant was under the supervision of the probation department while at the Cenikor facility, and probation officers are officers of the court and have the authority to take people into custody or place them under arrest, that the defendant was effectively "under confinement" of the probation department. While the conclusion of the trial court is not without logic, the language of the pertinent statutes requires a contrary interpretation.

Section 18–1–105(9)(a)(V) applies only when a defendant is under confinement, "in prison, or in any correctional institution ...." The probation department is not a prison or correctional institution. In addition, if a defendant under the supervision of the probation department were to be considered "under confinement" as provided by § 18–1–105(9)(a)(V), then there would be no need for § 18–1–105(9)(a)(III), C.R.S. (1983 Cum.Supp.), which provides that another extraordinary aggravating circumstance is when a defendant is on probation for another felony at the time of the commission of a felony.

The trial court did not consider the Cenikor facility to be a "correctional institution within the state," such that the defendant would be subject to enhanced punishment as an escapee from such an institution under § 18–1–105(9)(a)(V), and there is nothing in the record to suggest that the facility so qualifies.

We conclude, therefore, that under the statutory scheme adopted by the General Assembly the trial court erred in applying § 18–1–105(9)(a)(V) as the basis for imposing sentences beyond the presumptive range.

The judgments are affirmed, but the sentences are reversed, and the cause is remanded to the trial court for resentencing.

PIERCE and BABCOCK, JJ., concur.