The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Jody M. AGADO, Defendant–Appellant.

No. 96CA0427.

Colorado Court of Appeals.

Feb. 5, 1998.

Rehearing Denied March 5, 1998.

Certiorari Denied Oct. 19, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Catherine P. Adkisson, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge PLANK.

Defendant, Jody Agado, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree murder. We affirm.

On the night before the shooting at issue, an argument between defendant and his girlfriend, with whom he was living, resulted in an agreement between them to live apart, but to date each other exclusively.

The next morning, defendant moved into his parents' home. That evening, defendant went out with a friend, taking his semiautomatic weapon with him. During the evening he consumed substantial amounts of alcoholic drinks.

Defendant's girlfriend also went out that evening, leaving a male friend at her apartment to baby-sit her children. Sometime after 2:00 a.m., defendant returned to his parents' home, called his girlfriend's apartment, and talked to the baby-sitter.

Moments later, defendant's girlfriend called him and he became upset. Carrying his semi-automatic weapon, he left his parent's house.

When defendant arrived at his girlfriend's apartment, the baby-sitter opened the door. Defendant raised the gun, which then discharged. The baby-sitter was struck and fatally injured by the gunshot. Defendant fled to his parents' home, and told them that the shooting was an accident. He thereafter went to the police station, and the criminal prosecution here at issue followed.

## I.

Defendant first contends that the trial court erred in admitting evidence of the domestic argument as *res gestae* evidence of the charged offense. We disagree.

Before trial, the prosecution filed a motion *in limine* to admit evidence of the argument that defendant had with his girlfriend the night before the shooting. The prosecution argued that such evidence was admissible either as *res gestae* evidence of the offense charged or as a prior act, pursuant to CRE 404(b), to establish motive, intent, deliberation, and absence of mistake or accident.

After a hearing, the trial court found such evidence, including evidence that defendant had fired his weapon into the air earlier on the night of the shooting, to be admissible as *res gestae* evidence.

Evidence of other offenses or acts that form part of the criminal episode or transaction with which a defendant is charged is admissible to provide the fact-finder with a full understanding of the events surrounding the crime. *People v. Quintana,* 882 P.2d 1366 (Colo.1994). Such *res gestae* evidence includes criminal conduct that is part and parcel of the crime charged or provides a background for the offense. *People v. Allen,* 944 P.2d 541 (Colo.App.1996).

*Res gestae* evidence need not meet the procedural requirements of evidence introduced pursuant to CRE 404(b). Before admitting *res gestae* evidence, however, the trial court must find that its probative value is not substantially outweighed by the danger of unfair prejudice. *People v. Rollins,* 892 P.2d 866 (Colo.1995).

The Colorado Rules of Evidence strongly favor the admission of material evidence, *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990), and a trial court has substantial discretion in deciding questions concerning the admissibility of evidence. *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

Here, evidence of the argument between defendant and his girlfriend on the night before the shooting provided the jury with a fuller understanding of the events surrounding the crime.

Contrary to defendant's argument, we conclude that the trial court, after weighing the evidence before it, did not abuse its discretion in finding the evidence of that argument to be "part and parcel" of the entire event. Thus, the challenged evidence was properly admitted as *res gestae.*

## II.

Defendant next argues that the trial court erred by refusing to declare a mistrial because the jury's consideration of the *mens rea* element was poisoned by an unfair demonstration of the shooting and by the jury's own experiment with the weapon. We disagree.

Defendant testified at trial. During cross-examination, he was asked to demonstrate how he had held the gun when it discharged.

Defendant stated that he could not hold the gun as he had on the night of the shooting because his middle finger was broken. Over objection, he was instructed to proceed with the demonstration and to pull the trigger. On redirect examination, defendant explained that his broken finger had prevented him from demonstrating the trigger pull as it had actually occurred when the victim was shot.

Over objection, the prosecutor suggested during closing argument that the jurors test the trigger pull. The trial court overruled the objection but acknowledged that the trigger pull would seem different to each individual. The jury was subsequently permitted to examine the gun during deliberations.

Defendant's motion for a mistrial was denied. He claims that he suffered prejudice as a result of his inaccurate demonstration and each juror's subjective examination of the trigger pull. We are not persuaded.

A trial court has broad discretion in deciding whether to grant or deny a mistrial, and its decision will not be disturbed on appeal absent a gross abuse of discretion and prejudice to the defendant. A mistrial is a drastic remedy and is warranted only if the prejudice to the defendant cannot be remedied by other means. *People v. Abbott,* 690 P.2d 1263 (Colo.1984).

The admission or exclusion of evidence of an experiment rests largely in the discretion of the trial court. An experiment is not rendered inadmissible solely because it is based on a disputed reconstruction of the crime. *People v. McCombs,* 629 P.2d 1088 (Colo.App.1981). Pursuant to CRE 403, a witness may be required to display evidence before the jury if the probative value of such evidence outweighs any prejudicial impact. *See People v. Martin,* 791 P.2d 1159 (Colo.App.1989).

Similarly, the jury's access to demonstrative evidence is within the discretion of the trial court. *See May v. People,* 77 Colo. 432, 236 P. 1022 (1925). Subject to certain exceptions, exhibits which have been admitted into evidence may be used by the jury during its deliberations. *See People v. Melanson,* 937 P.2d 826 (Colo.App.1996).

Here, the jury was presented with evidence of the gun's malfunction, defendant's inexperience with the gun, and defendant's intoxication on the night of the shooting. Defendant testified that he had a friendly relationship with the victim, that the shooting was an accident, and that he did not recall whether he had pulled the trigger when the victim was shot. Thus, defendant's demonstration assisted the jury in assessing the contested issue of whether the shooting was an accident.

■ Further, we agree with the trial court that any prejudice flowing from defendant's demonstration of the trigger pull was ameliorated by his explanation at trial and the cast on his hand that was visible to the jury.

Under these circumstances, we conclude that the trial court did not abuse its discretion by proceeding with defendant's demonstration, allowing the jury to examine the weapon, or denying defendant's motion for mistrial.

### III.

■ Defendant also contends that the trial court's denial of his motion to prohibit testimony of his parents at trial impermissibly infringed upon his constitutional and common law rights. We disagree.

Claiming a constitutional right to family privacy and a common law parent-child privilege as to confidential family communications, defendant sought to prohibit evidence of all statements he made to his parents following the shooting. After a hearing, the trial court denied his motion as to this issue.

Defendant concedes that a parent-child privilege has not been created by the General Assembly. However, he contends that the trial court here failed to acknowledge the "constitutional and common law underpinnings" of such a privilege, and urges this court to adopt a parent-child privilege based upon the reasoning of *People v. Fitzgerald*, 101 Misc.2d 712, 422 N.Y.S.2d 309 (1979) (parent-child privilege flows from United States and New York Constitutions) and *In re Agosto*, 553 F.Supp. 1298 (D.Nev.1983) (parent-child privilege is based upon the confidential nature of specific communications between parent and child and upon the privacy which is a constitutionally protectable interest of the family in American society).

Testimonial privileges are not lightly created nor expansively construed, for they are in derogation of the search for truth. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The majority of jurisdictions that have considered adopting a parent-child privilege have declined to do so. *See United States v. Davies*, 768 F.2d 893 (7th Cir.1985).

■ Section 13-90-107, C.R.S.1997, which sets forth Colorado's statutory privileged communications, does not include a parent-child privilege. Such privileges are strictly construed, and the burden of proving that a communication is protected by a privilege is upon the person asserting the privilege. *People.v. District Court*, 743 P.2d 432 (Colo.1987).

We decline defendant's invitation to adopt a parent-child privilege. Contrary to defendant's argument, we conclude that the trial court's denial of defendant's motion as to this issue did not impermissibly infringe upon his constitutional and common law rights.

### IV.

Lastly, defendant contends that the cumulative effect of the errors committed by the trial court denied him a fair trial. We disagree.

Contrary to defendant's argument, we conclude that there was no error to compound. Thus, there was no cumulative error in this case. *See People v. Roy*, 723 P.2d 1345 (Colo.1986).

The judgment is affirmed.

CASEBOLT, J., concurs.

BRIGGS, J., specially concurs.

BRIGGS, Judge, specially concurring.

I concur in the majority decision. I write separately to express concern and caution with excluding evidence denominated as *res gestae* from the requirements of CRE 404(b).

Because of the highly prejudicial nature of evidence admitted pursuant to CRE 404(b), the supreme court has established additional procedural requirements. For example, the trial court must determine the admissibility of other act evidence as a preliminary matter, before the jury is exposed to the evidence. In addition, the court must give a limiting instruction, both when the evidence is introduced and again when the jury receives final instructions. *People v. Miller*, 890 P.2d 84 (Colo.1995).

However, the supreme court, in cases predating the adoption of our rules of evidence, had determined that *res gestae* evidence was admissible without adhering to the procedures otherwise required for admission of evidence of other crimes or bad acts. *See Dickerson v. People*, 179 Colo. 146, 499 P.2d 1196 (1972). The exclusion has continued to be applied, without discussion, since the adoption of our rules of evidence. *See People v. Quintana*, 882 P.2d 1366 (Colo.1994); *People v. Czemerynski*, 786 P.2d 1100 (Colo. 1990).

Further, evidence admissible as part of the *res gestae* now includes not just evidence of other acts that were substantially simultaneous in time and circumstance with the crime charged. It also includes evidence of events leading up to the crime charged, if needed to explain the setting, so that the context in which the charged crime occurred may be understood. *People v. Quintana*, *supra; People v. Czemerynski, supra.*

I recognize that CRE 404(b)'s procedural requirements of notice and a pre-trial determination are theoretically less important when the evidence of other acts is part of the *res gestae*. The reasoning is that the "close link" between the evidence and the charged crime is sufficient to give notice the evidence may be introduced at trial. *See generally* Brauser, *"Intrinsic or Extrinsic": The Confusing Distinction Between Inextricably Intertwined Evidence and Other Crimes Evidence Under Rule 404(b)*, 88 Nw. U.L.Rev. 1582, 1614 (1993–94).

However, at least in Colorado, not all evidence denominated as *res gestae* is so closely linked to the crime charged to avoid the risk of surprise—particularly evidence not linked in time and circumstance. *Cf. People v. Fears*, 962 P.2d 272 (Colo.App. 1997)(evidence admissible as part of the *res gestae*, even though the two events were "somewhat remote in time").

The risk of surprise is not my only concern with continuing to forego compliance with the requirements of CRE 404(b) merely because evidence is denominated as *res gestae*. For example, no limiting instruction is required for evidence of other acts admitted as *res gestae, see People v. Quintana, supra*. However, the importance of giving a limiting instruction, particularly when the other acts were not substantially simultaneous in time and circumstances, is no less than when the evidence is admitted under CRE 404(b). While not mentioned in more recent cases, the supreme court has noted that, even with *res gestae* evidence, it is the "better practice to instruct the jury regarding the limited purpose of the evidence at the time it [is] admitted ..." *People v. Gladney*, 194 Colo. 68, 72, 570 P.2d 231, 233 (1977).

In addition, evidence of another act is sometimes admitted merely because it falls within the definition of *res gestae*, even though it could easily be excised. The limitation under CRE 403 that *res gestae* evidence should not be admitted if its probative value is "substantially outweighed" by the risk of prejudice or confusion has not always provided sufficient protection from misuse of the doctrine. *See generally* Brauser, *supra*; E. Imwinkelried, *Uncharged Misconduct Evidence*, §§ 6:28–6:30 (1994).

Finally, the very concept of *res gestae* can be problematic. In Colorado, the term has not been consistently defined, *compare People v. Rollins*, 892 P.2d 866 (Colo.1995) *with People v. Quintana, supra*, and, more generally, the doctrine has confounded counsel and courts, often tending to create as much confusion as clarification. *See generally* Brauser, *supra*; E. Imwinkelried, *Uncharged Misconduct Evidence, supra*. Even when the term is uniformly defined, it is difficult analytically to keep the determination of whether evidence is relevant distinct from whether it is part of the *res gestae*. For example, in this case, the evidence in ques-

tion had independent relevance to show the intermediate inference of motive, as well as the ultimate inference of intent, and was therefore admissible under CRE 404(b), but that has no bearing on whether the evidence was part of the *res gestae* of the crime.

One solution that would address these concerns would be to require that *all* evidence of other acts, including "intrinsic" *res gestae* evidence as well as other "extrinsic" evidence, be subject to the requirements of CRE 404(b). Such an approach is even more appropriate now that the "clear and convincing" standard previously applied under the common law for admitting evidence of other acts has been replaced under our rules of evidence by the lower "preponderance" standard. *See People v. Garner,* 806 P.2d 366, 370 (Colo.1991)(clear and convincing standard "was a common law rule of evidence and is no longer the controlling standard . . . under the Colorado Rules of Evidence"); *see generally* Brauser, *supra* (under the lower standard, the rationale for not applying rule 404(b) is now gone).

In the meantime, we must be cautious in the use of the *res gestae* doctrine to insure that the exception does not swallow the rule—particularly when, as here, the two acts do not occur at a substantially simultaneous time. In such circumstances, trial courts should apply a three-part evidentiary test.

First, trial courts should require that the other act have been part of events leading up to and "inextricably intertwined with" the crime charged. This means the events were more than merely prelude to and probative of the charged crime. Rather, the events must have been so closely connected to the criminal episode that they provide the context necessary for a full understanding of the crime. *Cf. People v. Czemerynski, supra.*

Second, trial courts should require that evidence of the other act itself be "inextricably intertwined" with those events. Thus, the evidence would not be admissible, at least as *res gestae,* unless its absence would awkwardly and artificially sanitize the remaining evidence, thereby creating an unfair risk of, for example, negatively impacting the credibility of the witness testifying or leaving the jury with a false impression concerning the crime charged. *See Callis v. People,* 692 P.2d 1045 (Colo.1984)(references to prior criminal conduct in an accused's custodial statement that has no independent relevance should be eliminated if it would not significantly impair the substantive content of those parts of the statement otherwise admissible); *see generally* E. Imwinkelried, *Uncharged Misconduct Evidence, supra,* § 6:30.

Third, trial courts should continue to apply separately CRE 403. Hence, even if the evidence were not earlier excised, it could be excluded if its probative value were substantially outweighed by the danger of unfair prejudice or confusion. *See People v. Garner, supra.*

Such a test is consistent with existing precedent and would reduce existing confusion. At the same time, because trial courts retain the authority to introduce evidence showing, for example, motive, identity, or intent under CRE 404(b), compliance with the test would not lead to any appreciable reduction in admissible evidence.

Further, regardless of the test applied to determine that evidence of other crimes or bad acts can be admitted as part of the *res gestae* of the crime charged, trial courts should continue to follow "the better practice" of giving a limiting instruction when requested to do so. *See People v. Gladney, supra.*

In this case, the outer boundaries of *res gestae* are being strained. However, our review is limited to determining whether in characterizing the evidence as *res gestae* the trial court abused its discretion. *People v. Moore,* 902 P.2d 366 (Colo.App.1994), *aff'd on other grounds, Moore v. People,* 925 P.2d 264 (Colo.1996).

Evidence of defendant's violent display of anger the night before the killing could arguably be viewed as part of the context necessary to a full understanding of the crime. The evidence explains the source of lingering anger that was the genesis of the criminal episode, the absence of which might leave defendant's actions on the night of the killing inexplicable except as an accident.

While the issue is close and the evidence would also fall within the scope of CRE 404(b), I cannot say the trial court abused its discretion in admitting the evidence as part of the *res gestae* of the crime charged, at least under existing precedent. Further, the trial court determined the admissibility of the evidence before trial, and defendant does not complain of the lack of a limiting instruction. I therefore concur.