**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**David TURLEY, Defendant–Appellant.**

**No. 99CA0036.**

Colorado Court of Appeals,
Div. II.

July 20, 2000.

Certiorari Denied Feb. 20, 2001.

*** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, sec. 5(3), and 24–51–1105, C.R.S.1999.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Wellborn Sullivan Meck & Tooley, P.C., William R. Rapson, Danielle V. Smith, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge PLANK.

Defendant, David Turley, appeals the denial of his motion for postconviction relief. We affirm.

In 1989, defendant, in two separate cases consolidated for trial, was convicted of sexually assaulting two women in Denver and of being an habitual criminal. Defendant's convictions were upheld upon separate direct appeals in *People v. Turley,* 870 P.2d 498 (Colo.App.1993) (*Turley I* ), and *People v. Turley,* (Colo.App. No. 92CA0874, March 24, 1994) (not selected for official publication) (*Turley II* ). The supreme court denied certiorari in both cases.

Defendant then brought motions for postconviction relief in each of the cases pursuant to Crim. P. 35(c), and the district court denied each motion without a hearing. Defendant now appeals those denials.

I.

■ Defendant contends that the postconviction court erred when it concluded that his equal protection rights were not violated by the trial court's application of § 16–10–104(1), C.R.S.1999, and Crim. P. 24(d). We disagree.

■ A court may deny a Crim. P. 35(c) motion without a hearing if the motion, the files, and the record clearly establish that the defendant is not entitled to relief. *People v. Hartkemeyer,* 843 P.2d 92 (Colo.App.1992).

Initially, we reject the prosecution's argument that this issue is not properly before us. Although it is true that defendant did not raise this issue in the trial court, where he instead simply requested the same number of peremptory challenges he would receive had he been charged with a capital offense, he did make this argument in his Crim. P. 35(c) motion and the postconviction court chose to address it.

Crim. P. 24(d) addresses peremptory challenges of jurors:

(1) For purposes of Rule 24 a capital case is a case in which a class 1 felony is charged.

(2) In capital cases the state and the defendant, when there is one defendant, shall each be entitled to ten peremptory challenges. In all other cases where there is one defendant and the punishment may be by imprisonment in a correctional facility, the state and the defendant shall each be entitled to five peremptory challenges, and in all other cases, to three peremptory challenges. If there is more than one defendant, each side shall be entitled to an additional three peremptory challenges for every defendant after the first in capital cases, but not exceeding twenty peremptory challenges to each side; in all other cases, where the punishment may be by imprisonment in a correctional facility, to two additional peremptory challenges for every defendant after the first, not exceeding fifteen peremptory challenges to each side. . . .

The rule, for the most part, simply reiterates and implements the requirements of § 16–10–104(1), C.R.S.1999. *See* § 16–10–104(2), C.R.S.1999.

Defendant argues that the statute and the rule impermissibly distinguish between those defendants facing life in prison as a result of an habitual criminal conviction pursuant to § 16–13–101, C.R.S.1999, and those facing the same consequence as a result of a conviction for a "capital offense" where the death penalty cannot or will not be imposed. We are not persuaded.

■ The party asserting that a statute is unconstitutional bears the burden of proving such beyond a reasonable doubt. When a statute does not involve a suspect classification, such as one based on race, and does not involve fundamental constitutional rights, it is not unconstitutional unless there is no rational basis for the classification it creates, or the classification has no reasonable relationship to legitimate governmental objectives. *People v. Wiedemer,* 852 P.2d 424 (Colo.1993).

At the time of defendant's convictions at issue here, the sentencing statutes required a

minimum of life in prison without eligibility for parole for 40 years for a class 1 felony. The same sentence was at that time mandatory for one found to be an habitual criminal.

Defendant argues that those facing the same mandatory penalty upon conviction are similarly situated for purposes of equal protection analysis. Even if that is true, we do not perceive the General Assembly's classification as being irrational.

The statute and the rule create a clear distinction between those charged with class 1 felonies and those charged with lesser felonies, and to the former they afford greater protection. That classification is not irrational inasmuch as class 1 felonies are plainly the most serious of offenses, and the General Assembly could rationally perceive that additional procedural protections for such defendants are warranted.

Because being an habitual offender is not a substantive offense but is, instead, a sentence enhancing circumstance, we do not perceive any irrationality in defendant receiving fewer peremptory challenges than afforded to defendants facing prosecution for the most serious offenses recognized under our law. *See People v. Edwards,* 971 P.2d 1080 (Colo.App. 1998) (habitual criminal sentencing is not a substantive offense but rather a sentence enhancer).

Accordingly, we perceive no error in the postconviction court's ruling that defendant's equal protection rights were not violated.

## II.

Defendant maintains that his convictions must be reversed because the advisement of the right to testify he received pursuant to *People v. Curtis,* 681 P.2d 504 (Colo.1984) was improper in two particulars. The prosecution asserts that these issues have already been decided against defendant in his prior direct appeal. We agree with the prosecution in part and find no error in defendant's advisement.

■ When a defendant raises the same issue in postconviction proceedings that was previously raised in a direct appeal, we will not consider that issue. *See People v. Rodriguez,* 914 P.2d 230 (Colo.1996).

■ An issue is essentially the same issue as one previously raised if review "would be nothing more than a second appeal addressing the same issues on some recently contrived constitutional theory." *People v. Bastardo,* 646 P.2d 382, 383 (Colo.1982).

■ Postconviction review is available only upon those grounds specifically enumerated in Crim. P. 35(c). The only ground pertinent to defendant's contentions here is that found in Crim. P. 35(c)(2)(I), which provides for review when "the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state."

Defendant, in his direct appeals to this court in *Turley I* and *Turley II,* raised two contentions of error relating to his *Curtis* advisement. First, in *Turley II,* he asserted that the trial court did not advise him that his testimony in one case would not trigger cross-examination of him on matters relating to the other case. Second, in both appeals, he argued that "the trial court inadequately advised him ... that evidence of prior felony convictions elicited in the substantive case could not be used against him in the habitual criminal proceedings." *Turley I, supra,* 870 P.2d at 503.

■ Here, defendant raises two contentions of error relating to the *Curtis* advisement: (1) that waiver of his right to testify in the substantive phase of the trial would not operate as a waiver of his right to testify in the habitual criminal phase; and (2) that if he were to testify in one case but not the other, his prior convictions could be used for impeachment only as to the case in which he testified.

Defendant's second argument here is plainly the same as the first *Curtis* issue raised in *Turley II,* albeit presented in slightly different terms. Defendant argued there, and continues to argue here, that the trial court's advisement inadequately informed him of the consequences of his decision should he decide to testify in one case but not the other. Because defendant had a full and fair opportunity to litigate that issue to the highest court of the state, we will not

now revisit it in this postconviction proceeding. *See People v. Rodriguez, supra.*

■ Defendant's first contention here, while not squarely included within either of his arguments in *Turley I* and *Turley II,* is not persuasive. Defendant argues that, because he was not separately advised of his right to testify during the habitual phase of the trial, he might mistakenly have believed that waiver of the right to testify during the substantive phase also operated as a waiver as to the habitual phase. However, the supreme court has held that no second *Curtis* advisement is necessary for the habitual phase of the trial, and this court has previously held that an adequate advisement in the substantive phase is all that is necessary. *People v. Gray,* 920 P.2d 787 (Colo.1996); *People v. Romero,* 767 P.2d 782 (Colo.App. 1988). Those cases are dispositive here, and, because there was no constitutional infirmity in the lack of a second *Curtis* advisement during the habitual phase, we perceive no error in the denial of defendant's motion for postconviction relief.

### III.

■ Defendant next contends that the postconviction court erred when it determined that his prior conviction in Adams County in 1979 for aggravated motor vehicle theft was constitutionally valid as part of the basis for his habitual criminal sentencing. We disagree.

The transcript of the providency hearing in the 1979 case reveals that defendant was not asked what his plea was, and he did not personally state on the record that he was pleading guilty, although his counsel indicated that such was his plea several times. Defendant concedes that the manifest intent of the providency hearing was for him to plead guilty in consideration of a favorable disposition, and that he received the favorable disposition for which he bargained.

Nevertheless, defendant argues that the technical failure to require him personally to state on the record that he was pleading guilty precludes the use of this prior conviction for habitual criminal purposes. Therefore, he argues that the three-year time limit applicable to collateral attacks on prior felony convictions prescribed by § 16–5–402(1), C.R.S.1999, does not apply because the judgment of conviction was void *ab initio.* We are not persuaded.

Early in the development of the criminal law, much emphasis was placed upon the rigid formalities of the arraignment and the taking of a plea. However, such has never been the rule in Colorado. *See, e.g., Minich v. People,* 8 Colo. 440, 9 P. 4 (1885) (plea may be entered either by the accused or by counsel, and counsel may waive the reading of the indictment); *cf. Ray v. People,* 6 Colo. 231 (1882) (complete failure to arraign and take a plea is fatal to the judgment); *see also Marler v. People,* 139 Colo. 23, 336 P.2d 101 (1959) (rigid adherence to ancient formalities of arraignment not reasonable or necessary, and guilty plea entered by counsel is adequate).

At the 1979 providency hearing, defendant was properly arraigned and advised of the charges against him, and his attorney stated repeatedly that defendant was accepting the offered disposition and was pleading guilty.

Unless some irregularity in the proceeding adversely affects the defendant's substantial rights or is objected to, that irregularity does not affect the validity of any subsequent proceedings, including the entry of a judgment of conviction and sentencing. Section 16–7–203, C.R.S.1999.

Here, defendant concedes, and we agree, that any irregularity in the providency hearing was "technical" and did not affect his substantial rights. We therefore conclude that the judgment of conviction at issue was not void *ab initio* and was constitutionally obtained. Accordingly, because defendant does not argue that this collateral attack on that conviction falls into any of the exceptions to the time limit set forth in § 16–5–402(1), C.R.S.1999, we also conclude that he is time-barred from such an attack on that conviction.

### IV.

■ Defendant next contends that his right to due process was violated when the verdict forms given to the jury directed a

verdict, in effect, as to certain elements of the habitual criminal counts. We disagree.

To be adjudicated an habitual criminal pursuant to 16–13–101(2), C.R.S.1999, as pertinent here, the prosecution was required to show that defendant had been convicted of three previous separate felonies. Defendant concedes that the jury was properly instructed as to these elements for each of the three prior felony convictions alleged.

The three verdict forms, which are identical for purposes of the issue raised by defendant, state, in pertinent part:

> We, the jury find the defendant, DAVID ALLEN TURLEY, *IS* the same and identical person who has [sic] previously convicted of a felony ... as alleged ... in the Information.

(emphasis in original)

The other alternative on each form is identically worded except that *"IS NOT"* is substituted for *"IS"*.

Defendant argues that the verdict forms required the jury to determine only whether defendant is the same person who was *allegedly* convicted in the prior proceedings, and that each form would therefore permit an habitual criminal finding even if the prosecution had failed to prove an actual conviction in each instance. We are not persuaded.

The jury was instructed, as to each habitual criminal count, that the prosecution was required to prove, *inter alia*, that defendant had previously been convicted of an identified separate felony.

Defendant asserts that the purported error is structural in nature and, thus, requires postconviction relief whenever it arises. We conclude that there was no error in the use of the verdict forms.

Here, in light of the correct instructions to the jury outlining all of the elements necessary to an habitual criminal finding, we are not persuaded that the verdict forms were in any way inadequate. The instructions and the verdict forms, taken together, properly informed the jury of each and every necessary element, and the verdict forms were not confusing as to what verdict would be rendered by selecting each alternative. The trial court instructed the jury that it was to follow the instructions to reach a decision, and then to indicate that decision on the verdict forms by signing one of the two alternatives. We presume, in the absence of anything in the record to the contrary, that the jury followed the instructions it was given. *See People v. Mandez,* 997 P.2d 1254 (Colo. App.1999).

Because the jury here was correctly instructed as to the elements necessary to a finding that defendant was an habitual criminal, and since those instructions govern the jury's decision that is then merely expressed upon the verdict forms, we perceive no error.

## V.

Finally, defendant asserts that the postconviction court erred when it denied his motion because the cumulative effect of the errors present in his trial warrants relief. We are not persuaded.

We have here and in defendant's prior appeal rejected each of his contentions of error. In the absence of any error to compound, there can be no cumulative error. *People v. Agado,* 964 P.2d 565 (Colo.App. 1998).

The denial of defendant's motion for postconviction relief is affirmed.

Judge TAUBMAN and Judge NIETO concur.